## UNIVERSAL RIM CO. v. FIRESTONE TIRE & RUBBER CO. et al.

(Circuit Court of Appeals, Sixth Circuit. July 18, 1925.)

No. 4186.

1. **Patents ☞36, 165—Claims of first inventor not narrowly construed, or held void for lack of invention, unless defenses clearly made out.**

Where patentee was first in United States to make split demountable tire carrying rim attachable with wedge bolts, without dependence on outside restraining means, his claims cannot be narrowly construed, or held void for lack of invention, unless such defenses are clearly made out.

2. **Patents ☞36 — Mere commercial success does not justify sustaining monopoly.**

No amount of commercial success will justify sustaining a monopoly, where it clearly and certainly appears that the step taken by the patentee did not involve inventive merit.

3. **Patents ☞328—1,095,775, claims 1, 9, for demountable tire-carrying rims, held not infringed.**

The Baker patent, No. 1,095,775, claims 1 and 9, for improvement in demountable tire-carrying rims, transversely split at one point and connected by a plate, held not infringed.

4. **Patents ☞328—1,095,775, claims 2, 6, for demountable tire-carrying rims, held not infringed.**

The Baker patent, No. 1,095,775, claims 2 and 6, for improvement in a tire-carrying rim, characteristic element of which was form of plate connecting rim at tranverse cut, so as to serve as a driving connector, held not infringed.

5. **Patents ☞25 — Locking stud and driving stud held mere aggregation.**

A locking stud and a driving stud, which have no interrelation, except their common carrying plate, constitute only an aggregation.

Appeal from the District Court of the United States for the Eastern Division of the Northern District of Ohio; D. C. Westenhaver, Judge.

Suit for infringement of patent by the Universal Rim Company against the Firestone Tire & Rubber Company and another. From a decree dismissing the bill (289 F. 884), plaintiff appeals. Modified, and, as so modified, affirmed.

Arthur Wm. Nelson, of Chicago, Ill., for appellant.

Edward Rector, of Chicago, Ill. (Albert L. Ely, of Akron, Ohio, F. O. Richey, of Cleveland, Ohio, and Amos C. Miller, of Chicago, Ill., on the brief), for appellees.

Before DENISON, DONAHUE, and KNAPPEN, Circuit Judges.

DENISON, Circuit Judge. This is the usual patent infringement suit, based on claims 1 and 9, and 2 and 6, of patent No. 1,095,775, for a demountable rim, issued to Universal Rim Company, as assignee of Baker, on May 5, 1914, upon an application filed June 13, 1910. The specified claims are quoted in the margin.[1] The District Court dismissed the bill.

As the automobile art had developed some little time before 1910, the pneumatic tires in common use were of two classes—those in which the beads were elastic and those which had nonextensible beads. The rims which carried these tires necessarily had inside and outside flanges to prevent the tires from slipping off. Where the beads were elastic, and when it was necessary to remove a tire from the rim, the tire could be stretched over the outside flange; but with the nonextensible beads this could not be done. Hence it was necessary to make the outer flange removable, and it became a ring separable from the rim of which it was functionally a part. This was the situation of the art when it was observed that the tire could be carried upon an independent or demountable rim, distinct from the permanent or felly rim, and in this way a spare tire could be carried, inflated and ready for quick substitution when necessary. This demountable rim was held in position upon the felly by various methods. One means, well known before the invention of the patent in suit, consisted in making the demountable rim substantially larger than the felly band, providing wedges or wedge connections between

---

[1] "1. A one-piece, integrally flanged, demountable rim of the bolted-on class described, and transversely split at one point only in its circumference, in combination with a plate extending across said split and positively and non-adjustably, but detachably, connecting the ends of the rim, for the purposes specified."

"9. A one-piece, integrally flanged, demountable rim of the bolted-on class described, transversely split at one point only in its circumference, and presenting straight cut noninterlocking opposed rim ends, and means on said ends positively, but detachably, connecting the same to render the rim inexpansible by the bolting-on devices, for the purposes specified."

"(2) A one-piece, integrally flanged, demountable rim of the bolted-on class, described and transversely split at one point in its circumference, in combination with a one-piece combined driver and rim end connector extending across said split and positively, but detachably, connecting the ends of the rim, for the purposes specified."

"(6) A one-piece, integrally flanged, demountable rim of the bolted-on class described, and transversely split at one point only in its circumference, in combination with a combined rim end connector and driver, positively, but detachably, connecting the ends of the rim, for the purposes specified."

the two, and then by bolts and nuts tightening the wedge connection until there was a rigid holding. This was known as the "bolted-on construction," and is what is thus referred to in the claims.

Obviously there was the same problem as with a permanent rim in getting the tire past or over the outer rim flange; and, in view of the fact that the nonextensible form of bead had many advantages appealing for general use, and that a separate ring flange upon a demountable rim was more or less impracticable, other means were desirable for getting the tire onto the rim. This had been done by making the rim collapsible, and either making two or three joints so that sections of the rim could be turned inwardly, or making one split, tranversely through the rim, leaving two opposed free ends, one of which could be permitted to slip under the other, and the rim, on account of its spring tension construction, would then collapse sufficiently to allow the tire to pass over the outer flange. These free ends were then restored to their opposed position and suitably held there. Baker's invention pertained to the class of rim with the single transverse split.

[1, 2] Upon this record Baker was the first man in the United States who ever made a split rim and attached it with wedge bolts, without any dependence upon outside restraining means. The record also indicates that the enormous and well-nigh universal adoption of the idea thus broadly stated is fairly to be credited, in a commercial sense, to Baker and to his commercial efforts. Under such circumstances, the case for the patentee is a strong one, and his claims cannot be narrowly construed, or held void for lack of invention unless these defenses are most clearly made out; but no amount of commercial success will justify sustaining a monopoly, where it is made clearly and certainly to appear that the step taken by the patentee did not involve any inventive merit.

It is quite plain that some of the claims (it is sufficient to specify claim 1) contain language which is ambiguous, in the sense that without distortion it will read upon a great variety of structures, including defendant's form, and yet, by referring to the specifications and drawings for interpretation, may be much restricted. For example, claim 1 calls for "a plate extending across said split." Even if given a somewhat liberal construction, this might be interpreted as confined to a plate of the general type and function shown in the drawing, or it might be read still more broadly

as covering any suitable gap-spanning bridge. Hence it is desirable to know the state of the art, as affecting the breadth of construction which can rightly be given, and to know the defendant's form of device, as indicating the breadth of construction which must be given in order to reach the particular defendant now sued. A conclusion in favor of a defendant may rest upon a holding that there was no invention involved, or a holding that, under a proper construction of the claims, defendant does not infringe, or a holding that, if the claims are given a construction which supports the finding of infringement, they will be too broad to be valid. Which line is best to be followed will depend upon the facts of the case.

The devices of the patent drawing and of the defendant, said to infringe, are shown in the following cuts. Plaintiff's different forms, which have had commercial success, approximate that of defendant more than they do that of the patent drawing:

### PATENT IN SUIT

### DEFENDANTS' CONSTRUCTION

*Fig. 1.*

*Fig. 2.*

Taking up the prior art: The conclusions of the District Court were based largely upon a French patent to Boquillon, and the

argument in this court has been largely devoted to that patent. The questions are whether Boquillon antedated Baker's invention, whether the French patent substantially disclosed the characteristic thought of Baker, and whether certain language in the French specifications as to permissible variations was a sufficient prophecy of Baker's final step. We think best to pass by all these questions without intimation of opinion, and rest our conclusion upon what seem to us compelling reasons, found at home.

Baker's application was filed in June, 1910. He does not undertake to put his conception of the broad thought of his invention—that is, a combination of the single split rim, the bolted-on construction, and the rim ends interholding means—earlier than the fall of 1908. Before that date there were two existing United States applications for patents which are material. They were that of Shaw, filed May 25, 1907, which resulted in patent 971,318, issued September 27, 1910, and that of Hawley and Baker (the same Baker) filed April 11, 1908, and issued March 23, 1909, No. 915,954. In accordance with our established view, it must be held that Baker cannot be the first inventor of anything which had previously been completely invented and constructively reduced to practice by Shaw, even though Shaw's patent did not get issued until after Baker's application was filed, and likewise that Baker must disclose an inventive advance over Shaw. The same considerations apply to the earlier application of Hawley and Baker. If the Hawley and Baker application and patent disclosed only a specific application of Baker's now alleged generic idea, it would be theoretically possible that the Hawley and Baker application would be immaterial upon the subject of whether Baker had already taken a step involving invention; not so, where his step was taken after the Hawley and Baker application. He cannot be the first inventor of something which is not patentably distinguishable from what Hawley and Baker had already jointly invented.

The record shows that some Hawley and Baker device, apparently some modification of 915,954, was quite extensively on the market before Baker claims to have developed, to a substantial extent, his idea of the patent in suit. The Hawley and Baker device of the April, 1908, application is a "one-piece, integrally flanged demountable rim * * * transversely split at one point only in its circumference." The meeting ends are provided respectively with catches which may be gripped by a clamping tool, by means of which the rim ends can be brought together and locked in that position, or when unclamped they can be separated by a driven wedge. They were expanded for the purpose of putting the rim on the felly or taking it off, contracted to hold the rim in position.

Shaw discloses, also, a "one-piece, integrally flanged, demountable rim of the bolted-on class described, transversely split at one point only." His rim was not distinguishable from that of the patent in suit, except in the particulars to be mentioned; the free ends slipped past each other, permitting sufficient contraction to get the tire on, and then they were expanded to their abutting position, all just as by the patent in suit. Not only was this true, but the Shaw rim was "of the bolted-on class described." He says that his rim is attached to the felly by wedging engagement therewith, and he shows a nut and bolt means for causing the driving and holding of the wedges, which brings him clearly within this class. It is true that his integral flanges on the rim were not so shaped as to hold the tire firmly enough, but they did hold separable and higher flanges, which in turn held the tire beads in position. This subdivision of the rim, so as to carry a separable endless retaining flange, was desirable for the clencher type of tire shown in the drawing; but the specification points out that it may by a simple modification be adapted to the straight-sided tire, and with that form of tire there would be no occasion to have the flange separate.

The free ends of this Shaw rim were held, when expanded, by the construction shown in the following cut:

FIG.6.

FIG.7.

Plate *13*, called in the specification a "bridge piece," was riveted to the inside of the rim at one end and projected across under the opposed free end; this underprojecting portion carried an open-ended slot, and through the slot a bolt was inserted and screwed up into a suitably threaded hole in that rim end. This bolt and its head would prevent radial or lateral displacement of the two ends, and as the bolt head was tightened up it would clamp and hold, more or less effectively, against the expansion of the wedges, and keep the free ends from separating circumferentially. Shaw points out that the restraining effect of the separable flange rings was important to prevent undue rim-end separation; and it may well be, and for our present purpose we may assume, that his screw bolt end-clamping device would not be positive enough to be commercially satisfactory, unless aided by the rings. Beyond that, fair criticism cannot go.

We see, then, that a demountable rim with a single transverse split and with integral flanges, and of the bolted-on class, was old in Shaw (although Shaw had additionally the endless ring flange), and that the completely integral, flanged, single-piece, demountable rim, transversely split at one point only, but not of the bolted-on class, was old in Hawley and Baker, and that Baker conceived that Hawley and Baker's demountable rim might, in effect, be transferred to the bolted-on class. In this mere thought of substituting one known method of attachment for another there was no invention. It could be done by changing Shaw, so as to have the common integral tire-restraining flanges instead of separable ones, or by changing Hawley and Baker so as to make the split rim sufficiently resist the wedge expansion, as an unsplit one would do. It now seems to have been the obvious thing to provide this resistance by some sort of a slip interlock between the free ends, which could be pulled out of the locking engagement and so permit the rim to contract, and which, as the rim was expanded, would snap back into engagement and hold against further expansion. We have reached the conclusion that this is not only obvious now, but that it was an obvious and familiar mechanical expedient in 1908–09. This we regard as the turning point in the case, and we do not doubt that the question is a close one. However, we think it sufficiently clear.

The general slip-interlock method of detachable and nonadjustable engagement is familiar everywhere; sufficient examples of it are found in this art or close to it. It was shown in the French patent of addition to Liais, No. 8,428 of 1907, and the fact that it is here shown only casually indicates that it was a means too familiar to be stressed. Lipowski, by a British patent, No. 23,496 of 1899, also shows this method of slip end-interlock as applied to a split flange for retaining the tire in position.

[3] It will be seen by reference to defendant's device that all it has done (and therefore all that Baker can claim to have done to justify a patent broad enough to cover defendant's device) is to take Shaw's form of end-holding device and substitute for his detachably attached bolt, which screws into holding position, the permanently attached lug, which snaps into holding position. From another point of view, we see that demountable split rims had been fastened on by clamping down (Hawley and Baker) or by wedging out (Shaw); that with the latter method it was obviously necessary to keep the ends from separating; that Shaw did this by an external restraining ring; and defendant has done it by a mere and familiar end-interlock. Applying as well as may be the familiar principles, we must conclude that invention was not involved of a breadth necessary to support the conclusion that claims 1 and 9 are infringed. In this connection, it is not without significance that claim 9 expressly disclaims a mere end-interlock, which is what defendant uses.

[4, 5] Claims 2 and 6 have reference to an added function. In Baker's form of connection plate, which was not permanently attached to either rim end, studs, attached to the plate and which projected into and engaged the opposite rim ends, were long enough to pass through the rim ends and enter holes provided in the permanent wheel rim or felly. Thus the studs served the double function of holding the rim ends together against expansion, and of causing the demountable rim to be positively driven by the revolving permanent rim. If the claims are confined to a device where the same locking member serves both functions, there is no occasion to consider their validity, for in that case the defendant has not infringed. Defendant's so-called plate is some 8 inches long; 4 inches being permanently attached, by riveting, to one of the rim ends, and the other 4 inches extending beyond that end and carrying the outwardly projecting stud for engagement with the other rim end. (If these dimensions are in-

correctly stated, the error does not seem important.) Near the end of the plate opposite from this stud is an inwardly projecting stud, which enters a corresponding recess in the felly and makes the driving connection. There is no functional relation whatever between the two studs. As a matter of convenient assembly, they are both carried by the same frame. If the plate were shorter, they might be close together, and the distance between them can be extended indefinitely by extending the length of the plate. The driving stud would drive, and the locking stud would lock, just the same, if the other were not in the vicinity, nor carried by the plate, but were carried directly by the rim. The holding or foundation plate, the means situated thereon for engaging the other rim end, and the means situated thereon for engaging the rim and the felly, having no connection with each other excepting the foundation on which they rest, plainly make an aggregation, and not a patentable combination. Reckendorfer v. Faber, 92 U. S. 347, 23 L. Ed. 719; Gas Co. v. United Co. (C. C. A. 6) 228 F. 684, 689, 143 C. C. A. 206. Since to give these two claims a construction covering this form would make them invalid, and since such construction is necessary to make out infringement, we conclude that infringement is not shown.

The decree below will be modified, so as to adjudge only that the claims in suit are not infringed, and, as so modified, is affirmed. Neither party will recover costs in this court.