BRUNSWICK–BALKE–COLLENDER CO. v.
SEAMLESS RUBBER CO., Inc.

District Court, D. Connecticut. August 1,
1928.

No. 1917.

1. **Patents ⊕165(3)—Patent claim, limited to definite, specific features, must be strictly construed against inventor.**

A patent claim, limited to definite and specific features, must be strictly construed against the inventor.

2. **Patents ⊕328—1,273,703, for closet seat with cemented layers of wood veneer, held valid, but not infringed, in view of prior art; "cement."**

Whelan patent, No. 1,273,703, for closet seat with dried layers of wood veneer cemented together, *held* valid, but narrow in scope, and not infringed, in view of prior art; "cement," as commonly used, implying substance dissolved in a solvent and hardening when solvent is evaporated.

[Ed. Note.—For other definitions, see Words and Phrases, Second Series, Cement.]

3. **Patents ⊕36(2)—Commercial success cannot be substituted for patentability, but may turn scale in favor of patentee, if patentability is doubtful.**

Commercial success cannot be substituted for patentability, nor change noninfringement to infringement, since invention may be limited as to its improvement in the art, though the article itself has wide utility or commercial success due to other factors; but such success may suffice to turn the scale in favor of patentee, if patentability is doubtful question.

In Equity. Suit by the Brunswick-Balke-Collender Company against the Seamless Rubber Company, Inc. Decree of dismissal.

William H. Davis and Merton W. Sage, both of New York City, and Henry F. Parmelee, of New Haven, Conn., for plaintiff.

Ambrose L. O'Shea and William A. Redding, both of New York City, and Arthur L. Shipman, of Hartford, Conn., for defendant.

THOMAS, District Judge. This suit in equity is based on an alleged infringement of the only claim in patent No. 1,273,703, issued July 23, 1918, to the plaintiff, on an assignment from Michael J. Whelan, the inventor. The application was filed January 5, 1914.

The defendant's answer is in the usual form, and the defenses relied upon are: (1) The claim is invalid, because (a) it is anticipated by the prior art; and (b) it does not amount to invention, but calls only for the exercise of mechanical skill; and (2) it is not infringed.

The invention relates to a toilet seat comprising a core built up from thoroughly dried layers of wood veneer, glued together and shaped in such manner as to leave the core with a rough, grooved, pubescent surface, which is covered with a semiplastic fine rubber, that is vulcanized into a hard rubber coating, which hermetically seals and completely covers the wooden core.

The single claim of the patent reads as follows:

"A closet seat comprising a wood core consisting of a plurality of thoroughly dried layers of wood veneer arranged one upon the other with the grain of each layer disposed angularly with respect to the grain of the adjacent layer or layers, said layers being cemented together and said core having a rough pubescent surface, and a covering of hard rubber vulcanized on said core and united therewith throughout the entire surface of the core."

The history of the application which eventuated in the patent in suit shows that among the claims originally presented was a claim for "a water-closet seat comprising a wooden core so thoroughly kiln-dried as to be devoid of moisture, said core having a pubescent surface, and an exterior veneer of rubber, said veneer being of dense, hard texture and capable of a high surface finish."

This claim was rejected by the Examiner on prior art patents, which showed seats of plastic material reinforced by means of an inner core of wood, and also of iron or other metal, together with a disclosure showing a seat formed of wood veneer and covered with varnish. In responding to this rejection the applicant argued as follows:

"It is respectfully pointed out that applicant does not broadly claim a wooden core and a veneer of rubber on the exterior thereof; nor does he broadly claim a veneer or laminated core with an exterior veneer of rubber. What he does claim is a wooden core so thoroughly kiln-dried as to be devoid of moisture and an exterior veneer of hard rubber penetrating the fiber of the core. And in connection therewith a pubescent surface on said core forming an additional anchorage for the hard rubber veneer."

Subsequently many amendments were filed and rejections entered, and after all of the claims in the application were canceled and rewritten, the claim of the patent in suit was submitted, and after final rejection by the Examiner it was allowed on appeal by the Board of Examiners in Chief.

The specification of the patent in suit emphasizes the drying of the sheets of veneer and states that "every sheet is first kiln-dried." In the practical work of making

commercial seats, plaintiff kiln-dries each layer of veneer from four to six days at temperatures between 125° F. and 130° F. A thin layer of heat and moisture-proof glue is applied to each kiln-dried sheet, and the sheets are superimposed one on another, to build up a blank, which is subjected to great pressure, to insure complete contact of all surfaces with the cement. The specification also emphasizes a redrying step in the following manner:

"After the cement is set, the completed blank is again placed in a drying kiln under pressure, and so superkiln-dried that the last vestige of moisture has been expelled therefrom."

In commercial practice the plaintiff follows the procedure outlined in the specification of again kiln-drying the completed blank after the layers are cemented together.

[1] From the specification of the patent, and from its history in the Patent Office, it appears that the term "thoroughly dried layers of wood veneer," in the claim, is of special significance, and does not contemplate the ordinary run of dry veneer in the market. The claim in suit further specifies that the layers of wood veneer are "cemented together." Respecting this cementing together, the only information furnished in the specification is that "a thin layer of heat and moisture-proof glue or cement" is applied to each sheet. The term "cement," as commonly used, implies a substance dissolved in a solvent, and when the solvent is evaporated the cement hardens, and binds the layers of material together. This may account for the necessity of superkiln-drying by the patentee after the laminated wood has been glued together. Cementing is a specific method of uniting substances, just as soldering, vulcanizing, welding, nailing, pegging, riveting, and sewing are other specific methods of securing materials together. The claim further specifies: "Said core having a rough pubescent surface." The specification particularizes on the "thoroughly dried wood," and the "pubescent surface," by stating that the thorough drying of the core renders the fiber of the core more easily penetrable by the rubber veneer, and that the pubescent surface provides a multiplicity of interfitted minute projections on the core, which unite with the vulcanized rubber to thoroughly anchor the covering to the core. Thus it will be seen that the claim is limited to definite and specific features. This being so, the plaintiff is bound by the rule laid down by Mr. Justice Sanford, writing the opinion of the Supreme Court in I. T. S. Rubber Co. v. Essex Rubber Co., 272 U. S. 429, 47 S. Ct. 136, 71 L. Ed. 335. The rule is stated on page 443 (47 S. Ct. 141) in the following language:

"The applicant having limited his claim by amendment and accepted a patent, brings himself within the rules that if the claim to a combination be restricted to specified elements, all must be regarded as material, and that limitations imposed by the inventor, especially such as were introduced into an application after it had been persistently rejected, must be strictly construed against the inventor and looked upon as disclaimers."

[2] The art cited by the Patent Office further indicates that the scope of the patent in suit is narrow. The patent to Stepp, No. 219,033 of 1879, discloses the covering of wooden articles with hard rubber, and while the patentee gives a specific instance of covering a wooden box with rubber, nevertheless the disclosure, as set forth in the specification, teaches the covering of any wooden article with hard rubber. The Barnes patent, No. 654,301 of 1900, discloses a closet seat with the crown portion made of hard rubber and the base of soft rubber vulcanized thereto. The Joralemon patent, No. 674,166 of 1901, discloses a toilet seat having a wooden core covered with celluloid. The patent to Romunder, No. 848,690 of 1907, discloses a toilet seat made of plates of veneer united by cement under heat and pressure. The patent to Hoelscher, No. 1,079,007, issued November 18, 1913, discloses a water-closet seat having a metal core enclosed in hard rubber. British patent to Wilkinson, No. 9,697, having an effective date of April, 1911, discloses a closet seat built up of sheets of wood veneer, with the grain of each layer disposed angularly with reference to the grain of adjacent layers, with the layers joined together by water-proof glue under pressure. This British patent discloses the exact type of core disclosed by the patent in suit.

The defendant's structure is made up of superimposed layers of commercially dry wood veneer and sheets of rubber. This stack of alternate wood veneer and sheets of rubber is heated under pressure, so that the rubber vulcanizes and acts as a binder between the laminations of wood. In this operation defendant follows the teachings of the Lowrey patent, No. 91,458, issued June 15, 1869. Defendant then cuts a suitable core blank from this built-up structure of wood and rubber, and this core blank, when finally shaped, is subjected to a rapidly revolving knife, which smooths the surface of the wood and leaves merely the ordinary smooth surface such as is left by an ordinary woodworking machine. This smooth core is

completely covered with rubber which is vulcanized over and to the core to comprise a smooth, hard, waterproof covering.

Defendant buys its wood veneer in the open market, does not subject the wood veneer to kiln-drying nor does it subject the finished blank to superkiln-drying. While it is true that the defendant uses heat and pressure when vulcanizing the rubber layers between the laminations of wood, this method is not the type of drying contemplated by the patent in suit. Defendant's seat, therefore, can be more economically manufactured than plaintiff's because defendant's structure comprises commercial materials which unite without special kiln-drying and superkiln-drying resulting in a saving incidental to two extra operations. In the steps employed by defendant which produce the article in suit, the layers of thin rubber used as a binder do not contain a solvent. Consequently there is no special need of heat to drive the solvent from the built-up structure. The heat, therefore, in defendant's steps of manufacture, is not for the direct purpose of driving out moisture but is for the direct purpose of softening the rubber layers to cause them to adhere to the wood veneer. The building together of the laminated core sheets or layers of defendant's structure is brought about by vulcanizing which is more analogous to welding than it is to cementing. While the patent in suit is for an article, not a process, nevertheless, these differences in steps of manufacture between the plaintiff's patent and defendant's seat result in differences in structure. In defendant's seat the rubber between the layers of the wood are vulcanized to produce a very dense structure and these layers of rubber at the edges of the core are united to a rubber covering, so that the rubber covering is securely bound to the core by vulcanization; whereas, in plaintiff's patent, the rough, pubescent surface is relied on to bind the core and the rubber covering. This is a substantial advantage to defendant's device, as well as a definite distinction from plaintiff's patent.

In view of the state of the art when the application on which the patent in suit was filed (January 5, 1914), it did not require the exercise of inventive genius to produce a closet seat comprising merely a core of laminated wood glued together and covered with a layer of hard rubber. In fact, when the application was pending, as above pointed out, such breadth of the invention was disclaimed. So, therefore, under any such broad construction of the claim as is necessary to cover this defendant, the claim is invalid. If the claim is construed with due respect to the limitations of "thoroughly dried layers of wood veneer" "cemented together" and "having a rough pubescent surface," then the defendant does not infringe.

[3] The closet seat of the patent in suit has been manufactured and sold by the plaintiff to a considerable extent, but it is settled law that commercial success cannot be substituted for patentability. If the question of patentability is one of doubt, commercial success may suffice to turn the scale in favor of the patentee. Duer v. Corbin Cabinet Lock Co., 149 U. S. 216, 223, 13 S. Ct. 850, 37 L. Ed. 707. Nor can commercial success change noninfringement to infringement. An invention may be limited as to its improvement in the art, even though the article itself may have wide utility, or wide commercial success, due to the other factors. Universal Rim Co. v. Firestone Tire & Rubber Co. (C. C. A.) 7 F.(2d) 24. Judge Hough, speaking for the Circuit Court of Appeals for this circuit in Belais v. Goldsmith Bros. Smelting & Refining Co., 10 F.(2d) 673, on the question of commercial success, said on page 674:

"We dismiss the argument based upon the profitable sales of the alloy. We are still of opinion that 'commercial success is an unsafe guide to invention, unless prior efforts to fill the space be shown, * * * and, when they are shown, it is not infrequently found that the faculty of invention was not necessary to fill whatever vacancy existed.' Boston, etc., Co. v. Automatic Co. (C. C. A.) 276 F. 910."

Therefore I find the patent valid and the claim narrow in scope, and that the defendant does not infringe. There may be a decree dismissing the bill, with costs to the defendant; and it is

So ordered.