## TRINITY PORTLAND CEMENT CO. v. STATE et al.

### No. 3761.

Court of Civil Appeals of Texas. Beaumont.

Oct. 17, 1940.

Rehearing Denied Oct. 23, 1940.

Benbow & Eddy and Sidney Benbow, all of Houston, for appellant.

Gerald C. Mann, Atty. Gen., and Glenn R. Lewis, Billy Goldberg, Cecil C. Rotsch, and Lee Shoptaw, Asst. Attys. Gen., for appellees.

WALKER, Chief Justice.

This was an action by appellant, Trinity Portland Cement Company, against the State of Texas et al., tried to the district court of Travis county without a jury, with judgment for appellees. The appeal was prosecuted to the Austin Court of Civil Appeals. The case is on our docket by order of transfer by the Supreme Court.

The following extracts from appellant's petition state the nature of its cause of action:

"I.

"That Trinity Portland Cement Company is a corporation duly authorized and actually doing business in the State of Texas, same consisting of manufacturing, selling and distributing what is commonly known as 'cement', its by-products and other commodities of a similar nature.

"II.

"That this suit is brought against the State of Texas, George H. Sheppard, Charley Lockhart and Gerald C. Mann as authorized and provided under the provisions of Acts of the 43rd Legislature, Regular Session, 1933, Chapter 214, page 637 for the purpose of recovering occupation taxes demanded by and paid to the said George H. Sheppard, State Comptroller of the State of Texas, which taxes were paid by the plaintiff herein to the defendant, George H. Sheppard, under protest. The pertinent portions of said protest being as follows:

"'That the law under which this tax is demanded and the color of authority under which the above named officials have demanded such tax reads as follows:

"'Cement distributors, (a) There is hereby imposed a tax of one and one-fourth (1-1/4¢) cents on the one hundred (100) pounds, or fractional part thereof, of cement on every person in this State manufacturing or producing in and/or importing cement into this State, and who thereafter distributes, sells or uses the same in intrastate commerce. Said tax shall accrue on and is imposed on the first intrastate distribution, sale or use; provided, however, no tax shall be paid except on one sale, distribution or use. The person liable for said tax is hereby defined to be a "distributor"

" 'II.

" 'That "Trinity Mix" is the product upon which the tax is being imposed and is not cement within contemplation of the above law, under which the tax is being demanded, and by reason thereof, the Public Officials demanding the payment of same have no authority under which to collect the same, and, therefore the tax is being erroneously, unlawfully and illegally demanded and collected.'"

By section III, it was alleged that on the 19th day of May, 1939, appellant paid to the State Comptroller on "Trinity Mix" taxes in the sum of $6,486.32, and on other specific dates up to January 26, 1940, additional taxes making the total sum of $9,-414.45. We give section IV: "This plaintiff will further show that this suit is not only brought for the recovery of the above taxes, but in order to avoid multiplicity of suits, is also brought for the purpose of recovering all future sums which may be demanded by the Comptroller and paid by this plaintiff to the State of Texas during the pendency of this suit."

Appellant alleges "as reasons and grounds for bringing this suit": (a) The commodity taxed by the State, and upon which it had paid the taxes in issue, "is not 'cement' within the contemplation of the law imposing an occupation tax upon the manufacture, sale and distribution of cement"; (b) The statute in issue contains "no express or implied grounds" subjecting appellant's product to taxation; (c) The statute under which appellant paid the tax "is unconstitutional in that it is ambiguous, uncertain, vague and indefinite, in that it does not define what product the

Legislature is attempting to assess or impose a tax upon, and by reason thereof is rendered wholly incapable of enforcement"; (d) The taxing statute "is unconstitutional and violates the Fourteenth Amendment to the Constitution of the United States and Section 13 of Article I of the Constitution of the State of Texas, Vernon's Ann.St., in that the said statute is vague, indefinite, uncertain, ambiguous and does not define or lay down any 'yard stick' so that the taxpayer can definitely ascertain just what the legislative intent was in imposing a tax"; (e) The taxing statute "is unconstitutional in that it does not define cement with such definiteness as the taxpayer can determine just what commodity the legislature is attempting to levy a tax upon, and carries heavy penalties for the violation thereof, and therefore the same further violates the Fourteenth Amendment to the Constitution of the United States and Section 13 of Article I of the Constitution of the State of Texas"; (f) The taxing statute "is unconstitutional because it is in violation of Article 5, Constitution of the United States in that it deprives the taxpayer of its property and is subject to criminal prosecution without due process of law."

We give section IV: "This plaintiff respectfully shows to the Court that this suit is brought against George H. Sheppard, Comptroller of Public Accounts, Charley Lockhart, State Treasurer and Gerald C. Mann, Attorney General of the State of Texas in their official capacities as authorized under and by virtue of the provisions of the Act of the 43rd Legislature, Regular Session 1933, Section 214, page 637 and that service of citation may be had by serving each and all of them."

Appellant prayed that "it have judgment for the taxes heretofore paid the State of Texas in the amount of Nine Thousand Four Hundred and fourteen Dollars and 95/100 ($9,414.95) Dollars and that it have judgment for all other and future taxes which may be paid or required to be paid to the Comptroller of Public Accounts pending the final outcome of this suit and cause of action, together with interest thereon as authorized and provided by law," and general and special relief.

Appellant instituted this suit under the provisions of Chapter 214, page 637, Acts of the 43rd Legislature, Reg.Sess.1933, codified as Article 7057b, Vernon's Ann. Civ.St. Appellees demanded the tax, and

it was paid by appellant, under authority of Sec. 41, Chap. 212, Acts of the 42nd Legislature, Reg.Sess.1931, page 355, codified as Art. 7047, Sec. 41.a, as brought forward in appellant's petition supra.

The first point to be considered under appellant's brief is whether its product is "cement" within the provisions of Art. 7047, § 41.a. The facts on this proposition are as follows:

(1) Appellant manufactured and sold its product in sacks bearing the following labels:

(a) On one side of the sack:

"67 lbs. net
TRINITY
MIX

MASONRY CEMENT

Trinity Portland
Cement Company";

(b) On the other side of the sack:
"TRINITY MIX

| Freight Shipping Bag Meeting Requirements of Consolidated Freight Classification or: Cement—Carload Guaranteed by Kraft Bag Corp.—Silman, Vt |
|---|

4-160
TRINITY MIX
MASONRY CEMENT
IS A
PORTLAND
CEMENT PRODUCT

TRINITY PORTLAND
CEMENT COMPANY

DALLAS, FORT WORTH
AND HOUSTON."

(2) Appellant's product consisted of a mixture of 50 per cent Portland cement and 50 per cent ordinary limerock, an inert material, ground up and not processed.

(3) Mr. Ganser, appellant's plant superintendent, testified that the limerock used in "Trinity Mix" "is similar to lime, and is added to the Portland Cement, making a commodity which they call Trinity Mix, which is used in making mortar by simply adding sand to the same. It is prepared for the convenience of people desiring to make mortar in order that they will not have to mix all of the ingredients on the job. They can make mortar simply by adding a certain amount of sand to the mixture."

(4) Mr. G. B. Boone, a chemist and chemical engineer, testified (Q. & A. reduced to narrative):

"Well, 'cement' can cover a multitude of sins, but, generally speaking, it is considered a material that when you mix it with water and get it into a plastic state, it can be used to bind building materials of one type or another together on a wall or floor, and subsequently, it becomes hard or stonelike in appearance. In the ordinary sense I would not consider lime cement; I would not consider limerock not processed cement. I consider the commodity in question, ground up limerock mixed with Portland cement, I consider the whole commodity cement. To illustrate my conclusion, I give the following illustration: If I go down to the store and buy a can of flea powder, I am interested in something to kill fleas on my dog. I am perfectly satisfied that it is a can of flea powder. After I buy it you will notice the active ingredient is probably not 3%. The other material in it has nothing to do with killing fleas. If I used the active ingredients straight, I would probably kill the dog too. If I buy that product, that will answer the need. I would not class as cement gypsum or red top plaster made from gypsum. Probably, there are many commodities of the nature of cement, such as the various forms and kinds of plaster, but I would rule them out as cement. I believe that you should make a classification which would rule out those which couldn't be used when exposed to the weather. The red top and dental plaster, they are not suitable to outdoor use. These are products suitable for indoor use; I would not consider these products cement. If I were in my own mind going to draw up an opinion of that sort, I would consider only materials that could be used in exterior work which would fill the definition that I gave; used for binding building materials, and used in a plastic stage, and subsequently hardening and would stand weathering and would give satisfactory service. It is quite possible that other experts might differ with my conclusion as to what constitutes cement. If you want me to give a general definition of cement, you will bring in everything that can be used to bind two bodies or particles together, and I have never heard of rubber cement being used extensively to bind building materials together."

We give the following definitions of cement:

(1) "A substance which is mixed with water and used in a soft or pasty state to join stones or bricks in a building, to cover floors, etc., and which afterwards becomes hard like stone; esp., such a substance made with lime, or a calcined mixture of clay and lime-stone." Webster's New International Dictionary, Second Edition.

(2) "[The term] 'Cement,' as commonly used, implies that a substance dissolved in a solvent, and when the solvent is evaporated the cement hardens, and binds the layers of material together." 14 C.J.S. page 61.

(3) Quoting from the Donaldson case, Donaldson v. Roksament Stone Co., C.C., 170 F. 192, 193:

"'Portland cement is the slow-setting product of a high-temperature kiln burning a pulverized cement rock, or mixture of clay and limestone of a very exact and regular composition.'

"'Natural cement is the quick-setting product of a low temperature kiln burning a cement rock of irregular composition.'"

(4) "The term 'cement,' as commonly used, implies a substance dissolved in a solvent, and when the solvent is evaporated the cement hardens, and binds the layers of material together." Brunswick-Balke-Collender Co. v. Seamless Rubber Co., D.C., 27 F.2d 925, 926.

(5) We take the following definition from Vol. 6, page 189, Encyclopedia Americana:

"A cement is any compound which, under certain conditions, is plastic and under others develops tenacity and can be used for holding together various materials; hence glue, lime, asphaltum, mucilage and solder are cements. By far the most important class of cements, structurally and commercially are the hydraulic cements, compounds of lime, silica and alumina that have the property when mixed with water to a paste of cohering or setting and finally becoming stone hard, even under water. The hydraulic cements may be divided into four classes based on differences in the materials used.

"The four classes of hydraulic building material above mentioned are: (1) Hydraulic lime made from a limestone containing a small proportion of clay (8 to 10 per cent) by burning at a low temperature and slaking the burned rock and water. (2) Hydraulic or natural-rock cement made from a limestone containing a rela-tively high proportion of clay, by burning at a low heat and grinding the product to powder. (3) Portland Cement made from an artificial mixture of carbonate of lime (either chalk, limestone or marl), with a certain proportion of clay, burning at a white heat and grinding the clinker to powder. * * *"

(6) "But this word has the ordinary commercial meaning of hydraulic cement, and also a larger, and perhaps more accepted, sense." American Sulphite Pulp Company v. Howland Falls Pulp Company, 1 Cir., 80 F. 395, at page 404.

■ It is our conclusion that appellant's commodity is "cement" within the meaning of the taxing statute. Appellant's commodity has every essential element of cement as defined by the authorities quoted above; admittedly it contains 50 per cent Portland cement. On authority of Encyclopedia Americana, Portland cement is made from an artificial mixture of carbonate of lime (either chalk, limestone or marl), with a certain proportion of clay, burning at a white heat and grinding the clinker to powder. There is nothing in appellant's commodity that is not a constituent element of Portland cement—half of it processed, and the other half not processed.

Appellant manufactured, advertised, sacked and sold its commodity as cement; by so doing it took advantage of the term "cement." Appellant's product—this mixture—must be given a classification. It is not mortar; it is not lime; since it possesses all the constituent elements of cement, we think it must be so classified. The following authorities sustain our construction of appellant's commodity: 19 U.S.C.A. § 1001, Par. 205; Wood Pressing Corp. v. State Tax Commission, 235 Ala. 438, 179 So. 254; McCaughn v. Hershey Chocolate Co., 283 U.S. 488, 51 S.Ct. 510, 75 L.Ed. 1183.

■ The second point presented by appellant's brief is the constitutionality of the taxing statute. Appellant, by its proposition, asserts that this statute is unconstitutional "because it is vague, indefinite and uncertain, and therefore incapable of being enforced." This proposition is overruled. Article 10, R.C.S.1925, reads:

"General rules—The following rules shall govern in the construction of all civil statutory enactments:

"1. The ordinary signification shall be applied to words, except words of art or

words connected with a particular trade or subject matter, when they shall have the signification attached to them by experts in such art or trade, with reference to such subject matter."

In Engelking v. Von Wamel, 26 Tex. 469, Mr. Chief Justice Wheeler, speaking for our Supreme Court, said: "* * * The rules for the construction of statutes require that the words employed by the legislature shall be taken in their ordinary and popular acceptation, unless technical words are used, or it clearly appears from the context that they were not intended to be so understood. * * *"

In Koy v. Schneider, 110 Tex. 369, 218 S.W. 479, 221 S.W. 880, 888, our Supreme Court said: "That the courts should uphold a statute as valid, unless it is clearly unconstitutional, is well settled by the authorities everywhere, and is expressly conceded by said dissenting opinion in this case. The settled and oft-repeated decisions of this court, rendered prior to the enactment of said statute of 1918, are very clearly to this effect: Every intendment and presumption being in favor of the constitutionality of a statute, it should not be held invalid unless its unconstitutionality be made to appear beyond any reasonable doubt."

█ It seems to be a well-settled rule of construction that a revenue act, even though it contains penal provisions, is not to be construed as strictly as other penal acts. On this point, in Lowe v. Farbwerke-Hoechst Co., 2 Cir., 240 F. 671, 672, the court said: "While 'revenue statutes, even though embracing penalties or forfeitures, are not to be construed like penal laws generally, * * * but are to be fairly and reasonably construed so as to carry out the intention of the Legislatures' (United States v. Stowell, 133 U.S. [1], 12, 10 S.Ct. [244], 246, 33 L.Ed. 555), * * *."

In State v. International & G. N. R. R. Co., 107 Tex. 349, 179 S.W. 867, 868, sustaining the term "light repairs" against the proposition that the term was vague and indefinite, our Supreme Court said: "The term 'light repairs' is composed of two words of common and constant use by those engaged in every line of employment, and, when used together, should be reasonably plain in meaning to any person; and, when the term 'light repairs' is considered by those engaged in a special line of industry and calling, such as the railroad business, it is possible that it might have a technical meaning in common use as applied to such industry, and in such event the expression 'light repairs' would mean what it is commonly understood to mean among those engaged in such special line of industry. But, aside from the possibility of this technical meaning, the inquiry is pertinent as to whether the Legislature could have used plainer words than 'light repairs' and conveyed a clearer meaning than that term imports. What clearer expression could have been used? What could have been provided in the act to make the meaning plainer? It occurs to us that a more definite expression could not have been used to cover the subject intended. If a definition of the term 'light repairs' had been attempted, it would have been impossible of construction, unless a catalogue of all repairs that might be considered 'light' was embraced in the act. * * * We know of no rule of construction that would authorize us to nullify an act of the Legislature because of uncertainty in meaning, when from the nature of the subject legislated upon no more definite meaning could reasonably be expressed, the effect of which would be to prohibit legislation upon the subject. * * *"

In State v. Shapiro, 131 Md. 168, 101 A. 703, 706, Ann.Cas.1918E, 196, it was held that certain legislation of the State of Maryland, requiring a license for "junk dealers" was not unconstitutional on the ground that it was "indefinite and uncertain." In Houston & T. C. R. R. Co. v. Stevenson, 29 S.W.2d 995, 998, our Commission of Appeals sustained legislation making it unlawful to operate a motor vehicle on a public highway without "adequate brakes kept in good working order"; and, in holding the statute constitutional, the court said: "What constitutes 'adequate brakes kept in good working order,' as applied to the operation of a motor vehicle upon a highway in this state, should not be difficult to understand. We think the terms used in the statute in question are easily understood by those who are to be governed by its provisions. This is all that should be required to meet the test of its validity."

These authorities support the constitutionality of the taxing statute, as against appellant's propositions.

As sustaining its contention that the taxing statute is unconstitutional, appellant cites the following authorities: (a) Winslett v. Case-Fowler Lbr. Co., 173 Ga. 539, 160 S.E. 384, 385. In that case the court

was construing legislation imposing an occupation tax on manufacturers of and dealers in lumber and lumber products. It was held that the act was unenforceable "as to manufacturers of or dealers in lumber products, but is not void in so far as it affects manufacturers of or dealers in lumber." In the case at bar, cement is taxed, but not cement products. The case is not in point. (b) Beaumont Traction Co. v. State, 57 Tex.Civ.App. 605, 122 S.W. 615. In that case the court struck down a penal statute on the ground that it was vague and indefinite, making it an offense to operate a street railway car without providing screens for the protection of the motorman; the court was not able, from the language of the statute, to ascertain the legislative intent. In the case at bar, the courts do not have to make "a blind guess" to ascertain the intent of the legislature. The statute levies a tax for each 100 pounds of cement on those manufacturing and importing this commodity. (c) United States of America v. L. Cohen Grocery Co., 255 U.S. 81, 41 S.Ct. 298, 299, 65 L.Ed. 516, 14 A.L.R. 1045. The legislation in that case made it unlawful "to make any unjust or unreasonable rate or charge in handling or dealing in or with any necessaries." The act did not define what should be considered an unjust and unreasonable charge. That case is not in point; the taxing statute does not assess a "reasonable and just tax" on cement, but fixes a definite tax.

As we understand the authorities cited above, defining "cement," in enacting the statute in issue, the legislature used a generic term, well understood in the building trade. We think this taxing statute falls directly within the rule of construction announced by the Supreme Court of the United States in Baltimore & Ohio R. R. Co. v. Interstate Commerce Commission, 221 U.S. 612, 31 S.Ct. 621, 625, 55 L.Ed. 878. That case involved the construction of an act of Congress regulating the hours of employment of railway employees. Overruling the contention that the act was invalid on the ground of uncertainty, the court said: "It is said that the words, 'except in case of emergency,' make the application of the act so uncertain as to destroy its validity. But this argument in substance denies to the legislature the power to use a generic description, and, if pressed to its logical conclusion, would practically nullify the legislative authority by making it essential that legislation should define, without the use of generic terms, all the specific instances to be brought within it. In a legal sense there is no uncertainty. Congress, by an appropriate description of an exceptional class, has established a standard with respect to which cases that arise must be adjudged."

The power of the Legislature of Texas to levy an occupation tax against certain occupations, and to exempt others, cannot be denied. Southwestern Oil Co. v. State of Texas, 217 U.S. 114, 30 S.Ct. 496, 54 L.Ed. 688.

The statute in issue has been in operation about nine years, and has been enforced by the Comptroller, on authority of an opinion from the office of the Attorney General of date the 11th of September, 1931, from which we quote:

"It is a fundamental rule of construction that the absence of anything in the context of a statute to the contrary, common or popular words are to be understood in a popular sense. Sutherland Statutory Construction, Section 389, page 747; Gilmore v. Waples [108 Tex. 167], 188 S.W. 1037. And a thing or subject which is not within the intent and spirit of the statute is not within the statute though within the letter. Sutherland's Statutory Construction, Section 379, page 730; Hawaii v. Mankichi, 190 U.S. 197 [23 S.Ct. 787, 47 L.Ed. 1016]; Pool v. Simmons, 134 Cal. 621 [66 P. 872]. And words or clauses may be enlarged or restricted to effectuate the intention or to harmonize them with other express provisions. Where general language construed in a broad sense would lead to absurdity, it may be so restrained. People v. Davenport, 91 N.Y. 574; McKee v. United States, 164 U.S. [287], 289 [17 S.Ct. 92, 41 L.Ed. 437]; Sutherland's Statutory Construction, Section 376, page 721.

"Bearing in mind the above rules of construction, it is the opinion of the writer that the Legislature intended to impose the tax upon any substance of a cementitious nature, which, in my opinion, would be commonly understood to mean such cement as is used in construction work, namely, the construction of buildings, roads, sidewalks, and the like, and would not apply to such substance as dental cement, belting cement, and like substances as mentioned in your inquiry. It seems that this theory is supported by the act itself by imposing only a nominal tax upon the one hundred

pounds of such cement which, I understand, is the standard unit for sale of cement used for ordinary construction work."

If the taxing statute in issue is ambiguous and open to construction, much weight should be given to the opinion of the Attorney General, quoted above, under which the State has collected this tax. In Koy v. Schneider, 110 Tex. 369, 218 S.W. 479, 221 S.W. 880, 885, it was said: "A kindred rule is that, where a statute is ambiguous—open to construction—a construction given it by even the head of an executive department of the state government will be followed and upheld by the courts, unless such construction is clearly erroneous."

It is our conclusion that the judgment of the lower court, denying appellant a recovery for the taxes paid under the taxing statute in issue, should be affirmed, and it is accordingly so ordered.

Affirmed.