Bob **BULLOCK, Comptroller of Public Accounts, et al., Appellants,**

v.

**RAMADA TEXAS, INC., Appellee.**

No. 12997.

Court of Civil Appeals of Texas, Austin.

Sept. 5, 1979.

Rehearing Denied Oct. 3, 1979.

Mark White, Atty. Gen., Gilbert J. Bernal, Jr., Asst. Atty. Gen., Austin, for appellants.

Richard F. Smith, Wynne & Jaffe, Dallas, for appellee.

PHILLIPS, Chief Justice.

Appellee sued appellants for recovery of $21,811.83 in franchise taxes, penalties and interest paid under protest, pursuant to Article 1.05, Title 122A, V.C.S. (1969).

The facts hereto were stipulated and the court, sitting without a jury, rendered judgment for appellee. Subsequently, appellants perfected their appeal to this Court.

We affirm.

The question before us is whether the trial court was in error in holding that only property owned by appellee on January 1, 1973, is to be included in computing appellee's franchise tax under Article 12.01(1)(b), Title 122A, V.C.S., for the fiscal year ending December 31, 1973.

Appellee's protest was based solely on the ground that appellant Comptroller did not use the proper date for measuring appellee's property under Article 12.01(1)(b) for the privilege of doing business in this state and in computing appellee's franchise tax liability.

It was stipulated that:

"In determining the county assessed value of the property owned by Ramada in Texas for the 1974 Franchise Tax Report, Ramanda used the county assessed value of the property held or owned by it on January 1, 1973. Property acquired by Ramada during its 1973 accounting year, even though on hand and owned by Ramada on December 31, 1973, had no county assessed value to Ramada on January 1, 1973, and was not included by Ramada for the purposes of computing the tax. Property sold by Ramada during its 1973 accounting year, even though not on hand and not owned by Ramada on December 31, 1973, had a county assessed value to Ramada on January 1, 1973, and was included by Ramada for the purpose of computing the tax."

The deficiency in franchise taxes levied against Ramada was based solely on the Comptroller's theory that the valuation date of the county-assessed property owned by appellee should have been December 31, 1973, and not January 1, 1973, as contended by appellee.

The pertinent parts of Article 12.01 are as follows:

"(1) Except as otherwise provided in this chapter, every domestic . . . corporation . . . shall file such reports as are required by Articles 12.08 and 12.19 and pay to the Comptroller a franchise tax for the period from May 1 of each year to and including April 30 of the following year, based on whichever of the following Subsections (a), (b), or (c) shall yield the greatest tax:

. . . . .

"(b) Four Dollars and Twenty-five Cents ($4.25) per $1,000 or fractional part thereof applied to the assessed value for county ad valorem tax purposes of the real and personal property owned by the corporation in this state . . . .."

Appellants contend that Article 12.01(1)(b) must be read with Article 12.08 which states as follows:

"(1) Except as herein provided all corporations required to pay an annual franchise tax shall, between January first and June 15 of each year, make a report to the Comptroller of Public Accounts on forms furnished by that officer, showing the condition of such corporation on the last day of the corporation's preceding fiscal year.

"(2) The report shall also contain any other information concerning the corporation that the Comptroller of Public Accounts shall direct."

Appellants point to that portion of Article 12.01 which states " . . . every domestic and foreign corporation . . . shall file such reports as are required by Articles 12.08 and 12.19 . . . "

Appellants argue that the plain and simple wording of the statutes requires that the above-quoted portion of Article 12.01 be read with that part of Article 12.08 requiring that a report be filed "showing the condition of such corporation on the last day of the corporation's preceding fiscal year." Article 12.19 has no pertinence here. We cannot agree with appellants for several reasons.

In *Houston Oil Company of Texas v. Lawson*, 175 S.W.2d 716 (Tex.Civ.App.1943, writ ref'd), decided two years after the enactment of the predecessor of Article 12.-

01(1)(b), the court noted that the Secretary of State, who then administered the tax, had required the taxpayer to include the assessed value on January 1 on property owned by the taxpayer on January 1. The statutes in question in *Lawson* are strikingly similar and are the predecessors to those at bar and include the language relied on by the State in Article 12.08.

■ The reason for January 1 is a reasonable one. It is evident from a reading of Article 12.01(1)(b) that the assessed value of a taxpayer's property is used in measuring the value of the right to do business in the state. See *General Dynamics Corporation v. Bullock*, 547 S.W.2d 255 (Tex.1976). The system for assessing and collecting *ad valorem* taxes in Texas requires the property to be assessed as of the first day of January, and a taxpayer pays taxes only on property which he owns on January 1. Article 7151, V.C.S. (Supp. 1978–1979). There is no reason to adopt a different set of rules for that portion of the franchise tax which is measured by the property tax.

In 1953 Attorney General's Opinion No. S–196, in discussing facts and a franchise tax statute closely related to those before us, ruled that January 1 was the correct date for determining ownership and pointed out that the Secretary of State (who administered the collection of taxes under the Franchise Act at that time), had consistently used the January 1 ownership date in interpreting the statute for more than fifteen years and that the legislature had acquiesced in that interpretation. Unless the statute unambiguously supports the position of appellants, appellee was entitled to rely upon the opinion of the Attorney General. See *Trinity Portland Cement Company v. State*, 144 S.W.2d 329 (Tex.Civ.App. 1940, writ ref'd). Indeed, the failure by the legislature to change the law with respect to the view proposed by appellants, in spite of its many amendments and recodifications over the years, indicates legislative acceptance which must be honored. See *Humble Oil & Refining Company v. Calvert*, 414 S.W.2d 172, 180 (Tex.1967).

In our judgment there is ambiguity in the construction of the statutes before us; however, the course followed by the court, the Attorney General, and the administrative agency for these many years as we have described above, is both reasonable and well founded.

■ Article 12.08 is not a taxing statute. The tax is both imposed and defined in Article 12.01. Article 12.08 prescribes reports to be filed and not property to be taxed. The reference to Article 12.08 in Article 12.01 does no more than duplicate the requirement that the report be filed, and, hardly incorporates Article 12.01 indiscriminately into Article 12.08.

There is also a persuasive argument that the language of Article 12.08 relied upon by appellants "showing the condition of such corporation on the last day of the corporation's preceding fiscal year," was intended only to apply to the basic tax of Article 12.01(1)(a), and not to the alternative tax in Article 12.01(1)(b).

Article 12.01(1)(a) basic tax is measured by capital and surplus, which are traditionally reported by accounts as of the last day of a corporation's fiscal year. The quoted language from Article 12.08 has been part of the franchise tax statute in substantially its present form since 1919 (V.C.S., Vol. 20A, p. 478), whereas Article 12.01(1)(b) was not even imposed until 1941, twenty-two years later. When adopted, the language in Article 12.08 referred to the capital and surplus provisions of Article 12.01(1)(a) franchise tax, and there is no reason to believe the legislature intended to expand its scope when the alternative Article 12.-01(1)(b) tax was added.

We affirm the judgment of the trial court.